IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STEPHANIE OAKLEY, as                )
administrator of the estate of Wyman )
Lucicus, deceased,                  )
                                    )
         Plaintiff,                 )
                                    )
v.                                  )    CASE NO. 2:20-CV-85-WKW
                                    )              [WO]
A.L. LOGISTICS, LLC,                )
                                    )
         Defendant.                 )

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Corrected Motion for Summary Judgment.
(Doc. # 36.)  Defendant argues that all claims in this wrongful death action fail
because they are time-barred and because Plaintiff's second amended complaint
cannot relate back to the original date of filing.  For the reasons stated below,
Defendant is incorrect, and summary judgment is due to be denied.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is proper under 28 U.S.C. § 1332 and § 1441(a),
as decedent was a resident of Alabama; Defendant A.L. Logistics, LLC, is a Texas
limited liability company whose members all reside in Texas; and the amount in
controversy is over seventy-five thousand dollars.  (Doc. # 1 at 3–4; Doc. # 20.)  The
parties do not contest personal jurisdiction or venue.

## II.  BACKGROUND

On July 20, 2017, around 2:15 a.m., Ricardo Diaz parked his tractor-trailer on the shoulder of Interstate 65 in Butler County, Alabama.  Plaintiff alleges that the tractor-trailer was parked only six inches from the travel lanes of the interstate and was not marked by any lighting or cones.  (Doc. # 29 at 2.)  Diaz then fell asleep inside of the tractor-trailer.  Shortly thereafter, Wyman Lucicus, another motorist traveling southbound on Interstate 65, drifted out of the travel lanes and struck the rear of the tractor-trailer.  Lucicus perished in the crash.

On June 10, 2019—shortly before the two-year statute of limitations had run—Plaintiff Stephanie Oakley, as administrator of Lucicus's estate, commenced this action in the Circuit Court of Butler County, Alabama.  Plaintiff sued Cepero Trucking, Inc. ("Cepero Trucking"), for the wrongful death of Lucicus under theories of negligence, wantonness, and respondeat superior.  (Doc. # 1-1.)  The caption of the complaint included "Fictitious Party Defendants A, B and C, whether singular or plural, being other legal entities who are legally responsible for any and all of Plaintiffs' injuries," but the body of the complaint did not describe any claims against the fictitiously named defendants.

On January 31, 2020—after the two-year statute of limitations had run—Plaintiff filed an amended complaint to add A.L. Logistics, LLC ("ALL") as an additional defendant.  (Doc. # 1-2.)  The amended complaint alleged the same

2

wrongful death theories of negligence, wantonness, and respondeat superior, but asserted liability against Cepero Trucking "and/or" ALL for the death of Lucicus. (Doc. # 1-2 at 3.)  ALL timely removed the case to this court and moved to dismiss the claims against it as time-barred.  (Doc. # 4.)  Plaintiff conceded that the two-year statutory period to bring a wrongful death action had expired but argued that her amended complaint related back to the original complaint, thus preserving her action against ALL.

On November 20, 2020, this court issued a Memorandum Opinion and Order granting ALL's motion to dismiss.  The court reasoned that Plaintiff's attempt to join ALL as an additional party does not count as a substitution of parties as required by the relation-back rules.  (Doc. # 22 at 10.)  Plaintiff argued that the action against ALL should be maintained in the alternative until discovery reveals whether Cepero Trucking or ALL is the true employer of Diaz.  The court denied this request, saying: "Should discovery support the substitution of another party for Cepero Trucking, Ms. Oakley can address the soundness of an amendment under relation-back principles in a properly supported motion at a later date." (Doc. # 22 at 11.)  Plaintiff subsequently moved to amend her complaint to substitute ALL for Cepero Trucking. (Doc. # 26.)  Plaintiff represented that the new claim arose out of the same conduct, transaction, or occurrence set forth in the original pleading; that ALL had notice of the lawsuit within the applicable time requirements; and that ALL knew or should

have known that but for some mistake it would have been named as a defendant. (Doc. # 26.) ALL did not respond to the motion as it was not a party to the action at that time and was not ordered to respond. Satisfied that Plaintiff had made a facial showing of the applicability of relation-back principles, the court granted leave to amend to substitute ALL for Cepero Trucking. (Doc. # 28.) However, the court was clear that the decision on the appropriateness of amendment was not a final determination of the issue of relation back:

> This finding does not foreclose ALL from raising a statute of limitations defense. If ALL has evidence that refutes Plaintiff's representations and exhibits, ALL can raise these matters in a properly supported summary judgment motion. However, Plaintiff sufficiently has demonstrated that her proposed amended pleading is not futile; hence, the courthouse doors are open for her lawsuit against ALL.

(Doc. # 28 at 5.)

On March 1, 2021, Plaintiff filed a second amended complaint, substituting all allegations in the original complaint from Cepero Trucking to ALL. (Doc. # 29.) ALL answered the complaint and immediately moved for summary judgment on statute of limitations grounds. (Docs. # 32, 33, 34.) ALL has subsequently filed a corrected motion, (Doc. # 36), Plaintiff has filed a response to the corrected motion, (Doc. # 37), and ALL has filed a reply, (Doc. # 38).

### III. STANDARD OF REVIEW

In a typical motion for summary judgment, the moving party must demonstrate that "there is no genuine dispute as to any material fact and the movant

4

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court would view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).  Genuine disputes of material fact would be left for a jury to decide. *Id.*

This motion, however, is not a typical motion for summary judgment.  Both parties agree that the instant motion turns on the second amended complaint's ability to relate back to the date of the original complaint under Rule 15(c) of the Federal Rules of Civil Procedure.  Relation back under Rule 15(c) is not a jury matter and is decided on judicial factual findings.[1]  *See Powers v. Graff*, 148 F.3d 1223, 1226 & n.6 (11th Cir. 1998).  Once the preliminary decision of the application of Rule 15(c) is made, however, the pending motion for summary judgment can be decided accordingly, as no genuine dispute of material fact would remain.  *See id.*

## IV.  DISCUSSION

An action for wrongful death brought under Alabama law must be commenced within two years after the death of the victim.  *See* Ala. Code § 6-5-410(d).  Rule 15(c) of the Federal Rules of Civil Procedure allows an amended

---

[1] A hearing was not conducted on this motion for three reasons.  First, no party requested a hearing.  Second, no credibility determination is needed as no party relies on a witness declaration or affidavit and the authenticity of the cited communications and reports is not disputed.  Third, witness testimony on ALL's knowledge would be mostly unhelpful in light of Rule 15(c)'s "knew *or should have known*" requirement.  Fed. R. Civ. P. 15(c)(1)(C)(ii) (emphasis added).

complaint to "relate back" to the date of the original complaint under certain circumstances and thereby be treated as having been filed at the time of the original complaint for statute of limitations purposes. Rule 15(c) provides:

(1) *When an Amendment Relates Back*. An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Rule 15(c)(1)(A)'s cross reference to "the law that provides the applicable statute of limitations" makes the Alabama counterpart to Rule 15 relevant to this analysis. The Alabama counterpart, Rule 15(c) of the Alabama Rules of Civil Procedure, contains almost exactly the same language and is subject to almost exactly the same interpretation. *See Borders v. City of Huntsville*, 875 So. 2d 1168,

1176 (Ala. 2003) ("Federal cases are authoritative in construing the Alabama Rules of Civil Procedure because the Alabama rules were patterned after the Federal Rules of Civil Procedure.").  The single exception arises from a textual difference:  Where Rule 15(c) of the Federal Rules references the time period found in Rule 4(m)—ninety days—Rule 15(c) of the Alabama Rules lists a longer time period of one hundred twenty days.  *See* Fed. R. Civ. P. 15(c)(1)(C); Fed. R. Civ. P. 4(m); Ala. R. Civ. P. 15(c)(3).[2]  Thus, this analysis is conducted using the default federal standards for relation back, except replacing the ninety-day requirement with a one-hundred-twenty-day requirement.  *See Oakley v. Cepero Trucking, Inc.*, No. 2:20-CV-85-WKW, 2020 WL 6828743, at *3 n.3 (M.D. Ala. Nov. 20, 2020).

ALL does not argue that the new complaint asserts a claim unrelated to the conduct, transaction, or occurrence in the original complaint.  (Doc. # 34 at 9–16.)  ALL concedes that its counsel received notice of the original complaint within one hundred twenty days of the date the complaint was filed.  (Doc. # 38 at 1–3.)  The only remaining question is whether, within one hundred twenty days of the filing of the original complaint, ALL "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed R. Civ. P. 15(c)(1)(C)(ii); *see Lindley v. Taylor*, No. 2:10-CV-0141-SLB, 2015

_____

[2] Prior to 2015, the Rule 4(m) period used for relation back under the federal rules was also one hundred twenty days.  *See* Fed. R. Civ. P. 4(m) advisory committee's note to 2015 amendment.

WL 1293224, at *6 (N.D. Ala. Mar. 23, 2015) ("Since the original complaint in this case was filed on January 22, 2010, plaintiff must show that by May 22, 2010, one-hundred and twenty days later, each defendant 'knew or should have known that it would have been named a defendant but for an error.'"), *aff'd sub nom. Lindley v. City of Birmingham*, 652 F. App'x 801 (11th Cir. 2016).

The Supreme Court has taken a broad interpretation of this "knew or should have known" requirement, as demonstrated in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010). In *Krupski*, the plaintiff was injured aboard a cruise ship owned by Costa Crociere, an Italian corporation. *Id.* at 541–42. However, the plaintiff accidentally sued Costa Cruise Lines, N.V., the United States sales and marketing agent for Costa Crociere. *Id.* at 542. Despite the fact that the plaintiff's ticket had identified Costa Crociere as the carrier, the Supreme Court held:

> Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint.
>
> Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity. For purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake. A mistake is "an error, misconception, or misunderstanding; an erroneous belief." That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity. A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise

to her claim.  If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties.  The only question under Rule 15(c)(1)(C)(ii), then, is whether party A knew or should have known that, absent some mistake, the action would have been brought against him.

*Id.* at 548–49 (alteration adopted) (citations omitted).

Of course, a prospective defendant could believe that the plaintiff has deliberately chosen to sue the other party instead of the prospective defendant.  After all, "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity."  *Id.* at 549; *see also Nelson v. Adams USA, Inc.*, 529 U.S. 460, 467 n.1 (2000) ("[The plaintiff] made no . . . mistake.  It knew of [the prospective defendant]'s role and existence and, until it moved to amend its pleading, chose to assert its claim for costs and fees only against [the original defendant].").  Either way, the proper question is whether the prospective defendant knew or should have known that a mistake was afoot.

In *Krupski*, "the face of the complaint plainly indicated . . . a misunderstanding" because the complaint accused Costa Cruise Lines of conduct that only Costa Crociere could have been responsible for and under theories that would only apply to Costa Crociere.  560 U.S. at 555.  The Supreme Court also noted that the two corporate entities were related and had similar names, factors which "heighten the expectation that Costa Crociere should suspect a mistake has been made when

Costa Cruise is named in a complaint that actually describes Costa Crociere's activities." *Id.* at 556.  Other aspects of Costa Crociere's business, such as a general use of the name "Costa Cruises" on advertisements and tickets should also have heightened Costa Crociere's expectation of confusion.  *Id.* at 556–57.  Thus, the Supreme Court concluded that Costa Crociere "should have known that [the plaintiff]'s failure to name it as a defendant in her original complaint was due to a mistake concerning the proper party's identity." *Id.* at 557.

## A.   Evidence That ALL Knew or Should Have Known of Plaintiff's Mistake

The first step in understanding Plaintiff's mistake is determining the truth of the matter:  Who was the employer of Diaz and who owned the tractor-trailer? According to ALL's amended jurisdictional statement, ALL is a limited liability company with two members:  Ricardo Diaz—the driver—and Alexis Castaneda Cepero.  (Doc. # 20 at 3.)  Cepero Trucking has only one director:  Alexis Castaneda Cepero.  (Doc. # 20-4 at 1–2.)  Further, according to counsel for ALL, "Cepero owned the trailer and ALL owned the cab [(tractor)]."  (Doc. # 12 at 29.)

If, as it appears from the jurisdictional statement, Diaz was employed by only ALL and not by Cepero Trucking, then Plaintiff's confusion can be clearly demonstrated from the face of the complaint.  The original complaint alleged that Cepero Trucking "negligently/wantonly hired, trained, supervised, and/or retained Diaz" and alleged that Cepero Trucking was liable for the acts of Diaz "under a

10

theory of respondeat superior." (Doc. # 1-1 at 2.) Both claims are predicated on an employer-employee relationship—a relationship that, at least according to the current record, is only maintained between Diaz and *ALL*. A party knowing these facts and reviewing the complaint should have known that the suit was intended to be against ALL and not Cepero Trucking.

The record *does not* unambiguously demonstrate that Diaz was solely employed by ALL. But even if Diaz was employed by both Cepero Trucking and ALL, the complaint focused on Diaz's alleged negligence in operating ALL's tractor, and did not include any allegations of negligence in the use of Cepero Trucking's trailer. The claim in the complaint would have been functionally the same had Lucicus crashed into Diaz's tractor while the tractor was not attached to a trailer. Of course, this is not to say that respondeat superior could not attach to Cepero Trucking in this hypothetical world of dual employment. But it is to say that ALL—aware of the suit and its allegations—should have recognized that the gravamen of the complaint was conspicuously centered on an absent party: itself.

Plaintiff filed her complaint on June 10, 2019. (Doc. # 1-1.) One hundred twenty days after that date was October 8, 2019. Thus, the question is whether ALL knew or should have known that Plaintiff had confused the relationship between ALL and Cepero Trucking on or before October 8, 2019.

11

The pre-filing evidence of confusion is extensive. The original crash report identified Cepero Trucking on the first page as the owner of the tractor-trailer and listed Prime Insurance Company ("Prime") as Cepero Trucking's insurer. (Doc. # 1-3 at 110.) Not until page four was ALL identified as the "interstate carrier." (Doc. # 1-3 at 113.) When Plaintiff contacted Prime, Prime indicated that it had no record of issuing an insurance policy to Cepero Trucking, but it provided the contact information for Alexis Castaneda Cepero. (Doc. # 37-2.) Counsel for ALL then confusingly responded to the Prime communication, saying: "I am in receipt of your October 9, 2017 letter addressed to Prime Insurance Company, please direct future correspondence to me." (Doc. # 33-2 at 2.) Thus, although ALL's counsel stated only that he represented ALL and made no claim of representation for Cepero Trucking, the distinction between Cepero Trucking and ALL was muddied when ALL's counsel responded to a communication pertaining to a potential Cepero Trucking insurance claim, telling the potential claimant to "direct future correspondence to me."

The distinction was further muddied when Plaintiff sent a request to ceperotrucking@yahoo.com, requesting to inspect the "truck with VIN# 1FUJA6CG43LK48857 that was involved in an accident on July 20, 2017." (Doc. # 26-1.) Counsel for ALL responded, inquiring whether it was the tractor or trailer being sought for inspection. (Doc. # 26-1.) Further, on September 27, 2018,

Plaintiff sent an evidence preservation request for counsel for ALL, referencing his client as "A.L. Logistics, LLC / Cepero Trucking Inc." (Doc. # 26-1 at 1.) Plaintiff again referenced both companies in a letter to counsel for ALL on October 1, 2018, in which Plaintiff informed counsel for ALL of the time, date, and location of an inspection of Lucicus's vehicle. (Doc. # 26-3.) According to Plaintiff, counsel for ALL subsequently attended the inspection. (Doc. # 37 at 5.)

Plaintiff's post-filing behavior also reeks of confusion. On September 13, 2019, after an unsuccessful attempt to serve Cepero Trucking by mail, counsel for Plaintiff emailed counsel for ALL, saying:

> I am attaching a courtesy copy of the subject lawsuit. Service is still underway, and before we incur more costs with our process server and move to serve by publication, may you agree to accept service and get this case going? You can tell your insurer that our process server has made several good faith attempts to the point where the Court likely will grant our motion to serve by publication and potentially tax costs to your insured. Please let me know and if so, please file a notice of appearance or an answer and we can start discovery.

(Doc. # 26-4.) The response from counsel for ALL did little to alleviate the confusion or to clarify the distinction between the two companies or their respective roles in the incident. Counsel for ALL's one-line response read: "I cannot accept service on behalf of Cepero Trucking, Inc." (Doc. # 26-5 at 3.)

Only on January 17, 2020—past the one-hundred-twenty-day mark—did counsel for ALL alleviate some confusion, saying:

> It has come to my attention that you are in the process of attempting to serve Cepero Trucking, Inc. ("Cepero") by publication. I previously informed you that I could not accept service for Cepero. That is because I do not represent Cepero, and do not know who insures it.
>
> As you know, I represent A.L. Logistics, LLC ("ALL"). As ALL was not named in the Complaint and the statute of limitations has now run, I am closing my file in this matter. However, if you intend any action against ALL, I would appreciate you providing me with a courtesy copy of the same.

(Doc. # 26-6 at 2.) This explanation was too late for ALL to claim that it clarified the situation for Plaintiff. Rule 15(c) only asks if ALL knew or should have known before the one-hundred-twenty-day mark that confusion existed. It does not ask whether ALL later had basis to believe that the confusion was lifted or whether Plaintiff later received the correct information. While the court does not intend to discount the clarifying communication, the communication in truth only serves to show that ALL knew that confusion was afoot and that clarification was needed.

On January 21, 2020, Plaintiff responded to the communication by email, asking counsel for ALL: "What is A.L. Logistics, LLC's involvement? They do not appear on the accident report; Cepero Trucking, Inc. is listed as the proper owner of the vehicle. Clarification would be greatly appreciated." (Doc. # 1-3 at 117.) Only then did counsel for ALL say, "It is my understanding Cepero owned the trailer and ALL owned the cab [(tractor)]." (Doc. # 1-3 at 117.) That same day, Plaintiff moved to amend her complaint to add ALL as a defendant. (Doc. # 1-3 at 108.)

14

**B.     ALL's Arguments Against Relation Back**

ALL makes three primary arguments against relation back.  First, ALL argues that Plaintiff made a deliberate choice and not a mistake in suing Cepero Trucking instead of ALL—and ALL could not be on notice of a mistake that therefore did not exist.  (Doc. # 34 at 14–17.)  Second, ALL argues that, even if a mistake did exist at some point, correspondence from the insurance carrier and counsel for ALL "should have allayed any misunderstanding that existed," (Doc. # 38 at 4), and therefore ALL was entitled to rely on the communications in believing that no mistake had been made.  Third, ALL argues that Plaintiff waived any right to substitute defendants by attempting to maintain the action against both Cepero Trucking and ALL for several months after learning the true identity of both parties.  (Doc. # 34 at 14–17.)  None of the three arguments is persuasive.

ALL's proof of lack of, or adequate correction of, mistake includes the following facts: (1) the accident report listed both Cepero Trucking and ALL; (2) Plaintiff had evidence indicating that Cepero Trucking and ALL were separate entities; (3) the insurance carrier said that it had "no record of issuing an insurance policy to Cepero Trucking, Inc."; (4) counsel for ALL repeatedly mentioned that he represents only ALL; and (5) counsel for ALL indicated that he did not represent Cepero Trucking.

15

Even assuming Plaintiff knew that Cepero Trucking and ALL were separate entities, the Supreme Court has held that a choice to sue one party over another is only inconsistent with a finding of mistake if the plaintiff "fully understand[s] the factual and legal differences between the two parties." *Krupski*, 560 U.S. at 549. The key differences between Cepero Trucking and ALL lie in which party employed Diaz and which party owned the tractor-trailer. It is not relevant whether one party had insurance and the other did not. Nor is it relevant if one party chose to retain counsel and the other party did not. Plaintiff did not have a clear indication of who owned the tractor and who owned the trailer until after the one-hundred-twenty-day mark. Plaintiff, according to the current record, still does not know the particulars of Diaz's employment. Thus, Plaintiff could not have made an informed, deliberate choice to sue Cepero Trucking instead of ALL.

ALL's evidence of correction of the mistake is similarly unconvincing. Plaintiff was mistaken in her assumptions that Cepero Trucking owned the entire tractor-trailer and that it employed Diaz. Correction of those mistakes, if it occurred at all, did not occur until January 21, 2020—well after the one-hundred-twenty-day mark. The evidence overwhelmingly indicates that ALL should have known that Plaintiff was confused at and before the one-hundred-twenty-day mark. The delivery of evidence that Cepero Trucking and ALL were separate entities, that one was represented, and that one was not insured as expected, was not sufficient for

16

ALL to conclude that the confusion had been resolved.  This information does next to nothing to inform Plaintiff of the error in the accident report, the true relationship between the entities, the relationship between the entities and the incident, or the relationship between the entities and Diaz.

ALL's last argument, centered on Plaintiff's behavior after the one-hundred-twenty-day mark, is completely unsupported.  As the Supreme Court took pains to clarify in *Krupski*:  "Rule [15(c)] plainly sets forth an exclusive list of requirements for relation back, and the amending party's diligence is not among them.  Moreover, the Rule *mandates* relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion."  560 U.S. at 553 (emphasis added).  The Court continued, saying:  "[T]he speed with which a plaintiff moves to amend her complaint or files an amended complaint after obtaining leave to do so has no bearing on whether the amended complaint relates back."  *Id.*  Besides its implication on what the defendant knew or should have known during the Rule 4(m) period, "[t]he plaintiff's postfiling conduct is otherwise *immaterial* to the question whether an amended complaint relates back." *Id.* at 554 (emphasis added).

ALL's argument—that Plaintiff has waived the right to claim mistake by pursuing claims against both Cepero Trucking and ALL—fails to engage with the Supreme Court precedent.  ALL does not cite any case indicating that relation back

is a waivable right.  Given that relation back is *mandatory* once the initial showing is met, and given that postfiling conduct is *immaterial* to the relation back analysis, it is unclear how waiver could be possible.

To the extent that ALL argues that Plaintiff's post-filing conduct demonstrates a lack of mistake—or an adoption of the mistaken decision to sue Cepero Trucking instead of ALL—ALL misreads the rule.  ALL is correct that Rule 15(c) will only provide relation back when there is a "change" of parties, as this court ruled in its previous memorandum opinion and order.  As a technical matter, therefore, the amendment must redirect the claims in the original complaint from one outgoing defendant to one incoming defendant.  (Doc. # 22 at 9–13.)

At issue here, however, is a different part of Rule 15(c).  Here, the court only asks if ALL "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii).  Although the term "mistaken identity" typically refers to an accusation against an entirely incorrect and factually innocent party, *see, e.g.*, *The Wrong Man: Telling the Story of Mistaken Identity*, Pilot, https://www.thepilot.com/news/features/the-wrong-man-telling-the-story-of-mistaken-identity/article_11b8f9 49-44c3-5afe-9992-82198898dadf.html (July 22, 2009), there is no reason to conclude that a "mistake concerning the proper party's identity" is limited to such situations.  The Supreme Court restated the test as follows:  "The only question . . .

18

is whether [the incoming defendant] knew or should have known that, absent some mistake, the action would have been brought against him." *Krupski*, 560 U.S. at 549. Thus, the kind of mistake contemplated by Rule 15 is simply "some mistake" without which "the action would have been brought against" the incoming defendant. Whether that means the action would have been against *solely* the new defendant or *in addition* to the other defendant is not relevant at this stage in the analysis. Nothing in the text of Rule 15 or *Krupski* looks at the relative liability of the outgoing defendant or limits relation back to scenarios where an entirely innocent party is substituted for a new party. *Cf. Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 506 (7th Cir. 2014) (arguing that Rule 15(c) can apply even where there remains doubt about identity of the responsible party).

After all, the point of Rule 15(c) is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski*, 560 U.S. at 550. "A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him" may have discarded key evidence or otherwise abandoned his ability to defend against suit. *Id.* But the rules require a defendant to maintain his ability to defend against suit, even beyond the limitations period, if he knows of the suit and knows or should know that only a mistake has prevented him from being named as

19

a defendant.  *Id.*  For furtive defendants like these, a plaintiff's attempt to add, rather than substitute, defendants is not a declaration that the plaintiff no longer intends to pursue a claim, or permission for the defendant to destroy its records.  The attempted amendment only serves to put the new defendant on notice that a claim is in fact forthcoming.  The fact that Plaintiff made a technical error in her amended complaint could not have prejudiced ALL whatsoever.  Here, the general preference for deciding cases on the merits overrides ALL's diminished interest in repose.  *See id.*; *Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*, 740 F.2d 1499, 1510 (11th Cir. 1984).

ALL cites no support for the contention that an attempt to bring claims against two defendants constitutes an informed, deliberate choice to bring claims against one defendant and abandon claims against the other.  Plaintiff certainly made "choices" in her prosecution of this action, but unless a plaintiff indicates, in an informed and unambiguous manner, that she intends to not pursue a claim that would otherwise relate back, the furtive defendant should continue to anticipate suit.  *Krupski*, 560 U.S. at 549; *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 561 (7th Cir. 2011) ("[The new defendant] brought on itself any harm it has suffered from delay, and can't be allowed to gain an advantage from doing that.").

## V.  CONCLUSION

As Plaintiff is entitled to relation back and ALL presents no other basis for summary judgment, the undisputed facts demonstrate that ALL is not entitled to judgment as a matter of law.  It is therefore ORDERED that ALL's corrected motion for summary judgment (Doc. # 36) is DENIED.

DONE this 31st day of January, 2022.

    /s/   W. Keith Watkins
UNITED STATES DISTRICT JUDGE