IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STEPHANIE OAKLEY, *as administrator of the Estate of Wyman Lucicus, deceased*, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-85-RAH |
| | ) | [WO] |
| A.L. LOGISTICS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

In this standing vehicle case, Plaintiff's son, the decedent, died during the early morning hours of July 20, 2017, when his vehicle drifted over the fog line on an interstate and struck a broken-down tractor-trailer that was parked on the shoulder within inches of the fog line. Stephanie Oakley, as administrator of the Estate of Wyman Lucicus (the Estate) filed suit under the Alabama Wrongful Death Act, Ala. Code § 6-5-410, asserting negligence and wantonness. The Defendant, A.L. Logistics, LLC (ALL), has moved for summary judgment. The motion is fully briefed and ripe for review. It will be granted in part.

### II. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue, and the record supports both.

### III. BACKGROUND

On July 19, 2017, Ricardo Diaz was driving his tractor-trailer (rig), heading south on I-65 in Butler County, Alabama, when it broke down on the interstate. Diaz parked the rig on the shoulder on top of the rumble strip within inches of the fog line and therefore within inches of passing traffic. (Doc. 64-6 at 4, 8, 11, 12; Doc. 72-1.)



(Doc. 72-1.) Both Diaz and ALL decided to have the rig repaired on the side of the interstate instead of having it towed to another location. (Doc. 72-3 at 26, 45; Doc. 73-4 at 93–94.) At the time of the accident made the basis of this lawsuit, the rig had been on the side of the interstate for over 12 hours. (Doc. 73-4 at 94; Doc. 64-5 at 12.)

During the early morning hours of July 20, 2017, Wyman Lucicus was driving south on I-65 from Tennessee to Brewton, Alabama.  At around 2:15 a.m., Lucicus, for unknown reasons, apparently began to drift to the right shoulder of the interstate and over the fog line.  The right front of his vehicle struck the left rear of Diaz's rig.  (Doc. 72-1; Doc. 72-3 at 50; Doc. 72-2 at 9.)  Lucicus died because of the injuries he suffered in the accident.

Another truck driver witnessed the crash.  In his deposition, taken six years after the accident, the witness stated that Lucicus had passed him going south and struck the back of the rig.  (Doc. 72-2 at 8.)  He also stated that there were no emergency or warning triangles placed behind the rig, nor were the rig's lights turned on.[1]  (Doc. 72-2 at 10–11, 14–17.)  Diaz testified differently, stating that he did turn his lights on and did set out emergency triangles.  (Doc. 72-3 at 41–42, 50–51.)

Trooper Jeremy Burkett of the Alabama Law Enforcement Agency (ALEA) arrived at the scene several hours after the accident and investigated.  (Doc. 64-5 at 11.)  At the scene, he observed that the rig was parked on the shoulder of the interstate just outside of the fog line but on top of the rumble strip, that three warning triangles were placed behind the rig, that the rig's parking lights were on, and that the rig had the appropriate reflective tape.  (Doc. 64-5 at 17, 21.)  Burkett also stated that the rig was legally parked but that it should have been towed to the next exit to be repaired due to safety reasons.  (Doc. 64-5 at 30–31.)

## IV. STANDARD OF REVIEW

Summary judgment is proper if there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  *See also* Fed. R. Civ. P. 56(a).  The

---

[1] The witness's testimony about the lack of warning triangles differed from a sworn statement he gave several weeks after the accident.  (Doc. 64-9 at 6; Doc. 72-2 at 17, 20.)

moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and should rely on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial.  *Id.* at 324. Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)–(B).

To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and "all justifiable inferences must be drawn in its favor."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

## V. DISCUSSION

The Estate's negligence and wantonness claims fall into two general categories: (1) those theories relating directly to the crash itself and Diaz's and ALL's actions immediately preceding it—like parking the rig within inches of the fog line and passing traffic for an extended period of time and into the night, without displaying any lights or setting out any warning triangles or cones, and without towing the rig to another location—and (2) other theories relating to ALL's business operations, truck maintenance and inspection, record-keeping, drug-testing, and hiring, training, and supervision of Diaz.

ALL moves for summary judgment on all claims.  It argues that Diaz did not act negligently or wantonly and that no negligent or wanton act by Diaz was the

proximate cause of the accident.  Instead, according to ALL, it was Lucicus's own actions in drifting out of his lane of traffic and over the fog line that was the proximate and intervening cause of the accident.  ALL also argues there is no evidence that ALL negligently or wantonly maintained or inspected the rig or that Diaz was an incompetent driver, and that the Estate's other theories of negligence and wantonness are not actionable.

In response, with little discussion of the law and heavy reliance on alleged facts, the Estate focuses on photographs of the rig parked just off the interstate's lane of travel, the testimony of two witnesses (the eye-witness and the investigating trooper) concerning the location of the rig together with the lack of illuminating lights and warning triangles, and Diaz's decision to leave the rig on the side of the interstate for over 12 hours and into the darkness of the night within inches of passing traffic—instead of having the rig towed to a safer location.  The Estate also cites to ALL's failure to timely drug-test Diaz, issues with the rig's maintenance and inspection records and logbooks, and Diaz's commercial driver's license status, all to raise genuine issues of material facts.

As to the second category of negligence and wantonness—like negligent and wanton maintenance, inspection, hiring, training, supervision, and retention—ALL is entitled to summary judgment.  ALL points to the Estate's lack of evidence of proximate causation; that is, that the alleged instances of negligence and wantonness in the inspection and maintenance of the rig or in the hiring, training, retention, and supervision of Diaz did not proximately cause the accident under the facts presented here.  The Estate does little, if anything, to respond.  Instead, the Estate's response focuses on Diaz's decision to park and leave the rig for an extended duration into the night without illuminating lights and warning triangles: allegations that go directly to the Estate's first category of claims—its negligence and wantonness claims targeting the events of the crash itself.

In not responding, or at least not sufficiently responding, to ALL's summary judgment arguments on its second category of theories and claims, the Estate has abandoned them. *Clark v. City of Atlanta*, 544 F. App'x 848, 855 (11th Cir. 2013) (holding that district court properly treated claims as abandoned where they were alleged in the complaint but not addressed in opposition to a motion for summary judgment). But even if the Estate's response could be construed as sufficiently addressing these theories, the Estate has not shown a question of fact on Diaz's competence to drive a commercial vehicle or ALL's knowledge of his alleged incompetence. The record is devoid of evidence that Diaz was incompetent, that any such incompetence played any role in the accident, or that ALL was aware of or should have been aware of that incompetence. *See, e.g., Bishop v. R.A. Wagner Trucking, Inc*., Nos. 4:11-cv-2457, 4:12-cv-2003, 2014 WL 636987 (N.D. Ala. Feb. 18, 2014). And the Estate fails to show or provide any legal argument whatsoever showing why the status of Diaz's driver's license, if assumed true and standing alone, is admissible or relevant to the issue of Diaz's negligence or wantonness, or to the accident in general. *See, e.g*., *Chattahoochee Valley Ry. Co. v. Williams*, 103 So. 2d 762, 767 (Ala. 1958); *Mason v. New*, 475 So. 2d 854, 856 (Ala. 1985). Accordingly, ALL's summary judgment motion on the Estate's theories and claims concerning negligent and wanton hiring, training, supervision, and retention of Diaz and the failure to maintain or inspect the rig, to have or enforce adequate policies and procedures, to educate Diaz, to periodically audit or check drivers, to periodically audit driver logs for hour violations, or to design systems that drivers are trained is due to be granted. (Doc. 29 at 2, ¶¶5–7).

That leaves for discussion the real issues in the case—the decision to park the rig within inches of passing traffic for an extended period of time and into the night instead of having it towed; the presence or lack of warning measures such as lights and warning triangles; and Lucicus's own actions in drifting out of his lane of traffic.

Some of these factual issues are disputed and some turn on issues of proximate cause and foreseeability.[2]  From ALL's perspective, it argues that it is entitled to summary judgment as a matter of law because Diaz did not act negligently or wantonly, and even if he did, that negligence or wantonness was not the proximate cause of the accident because it was Lucicus's own intervening actions in drifting out of his lane that caused the accident.

*A. The Negligence Claim*

Since this case is filed in federal court on diversity jurisdiction grounds, Alabama law applies to the substantive issues and federal law to the procedural issues.  *Hanna v. Plumer*, 380 U.S. 460, 465 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938).  To prevail on a negligence claim in Alabama, a plaintiff must show that the defendant owed the plaintiff a legal duty, that the defendant breached that duty, that the plaintiff suffered a loss or injury, and that the defendant's breach was an actual and proximate cause of the injury.  *QORE, Inc. v. Bradford Bldg. Co*., 25 So. 3d 1116, 1124 (Ala. 2009).  "Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new and independent causes, produces an injury or harm and without which the injury or harm would not occur." *Morgunson v. 3M Co.*, 857 So. 2d 796, 800 (Ala. 2003). (citing *Dillard v. Pittway Corp*., 719 So. 2d 188, 192 (Ala. 1998)).  "The cornerstone of proximate cause is foreseeability." *Id.* (citations omitted).  Generally, a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous.  Foreseeability establishes a zone

---

[2] ALL also argues that the Estate raises issues of negligence that were not explicitly pleaded in the Amended Complaint and should therefore be ignored.  The Court generally agrees that a plaintiff cannot amend a complaint through briefing.  However, the Amended Complaint cannot be so narrowly construed as ALL argues.  Indeed, if that is the measure by which negligence pleadings must be pleaded in federal court, then ALL's contributory negligence affirmative defense suffers the same infirmity and should be ignored.

of risk, which is to say that it forms a basis for assessing whether the conduct creates a generalized and foreseeable risk of harming others. It "must be based on the probability that harm will occur, rather than the bare possibility." *Ex parte Wild Wild West Social Club, Inc.*, 806 So. 2d 1235, 1241 (Ala. 2001) (citing 65 C.J.S. Negligence § 4(3) (1966)).

"In Alabama, the issue of proximate causation hinges on foreseeability and is intertwined, analytically, with the concept of intervening cause." *Springer v. Jefferson Cnty.*, 595 So. 2d 1381, 1384 (Ala 1992). An intervening cause is "one which occurs after an act committed by a tortfeasor and which relieves him of his liability by breaking the chain of causation between his act and the resulting injury." *General Motors Corp. v. Edwards*, 482 So. 2d 1176, 1194 (Ala. 1985) (citing *Vines v. Plantation Motor Lodge*, 336 So. 2d 1338 (Ala. 1976)), *overruled on other grounds by Schwartz v. Volvo North America Corp.*, 554 So. 2d 927 (Ala. 1989). Stated otherwise, a negligent party is accountable only to those injured as a proximate result of such negligence, and "[w]here some independent agency intervenes and is the immediate cause of the injury, the party guilty of prior negligence is not liable." *Hall v. Booth*, 423 So. 2d 184, 185 (Ala. 1982). To say that an event occurring after a defendant's negligence was the "sole proximate cause" of the plaintiff's injury is simply another way of saying that the event was an intervening cause that prevents the defendant from being liable for the injury. *See General Motors Corp*, 482 So. 2d at 1194. "If an intervening cause could have reasonably been foreseen at the time the tortfeasor acted, it does not break the chain of causation between his act and the injury." *Id.* at 1195. "In the same respect, if the intervening cause is not sufficient to be considered the sole 'cause in fact' of the injury, if it is not in and of itself sufficient to stand as the 'efficient cause' of the injury, the causal chain is not broken; but, if the intervening cause was alone

sufficient to produce the injury complained of, it is deemed the proximate cause of the injury[.]" *Id.*

Regarding ALL's summary judgment motion, the Court must determine whether ALL has shown there is no genuine issue of material fact concerning the proximate cause of the crash. First, it must be noted that the "question of proximate cause is almost always a question of fact to be determined by the jury," and it "must go to the jury if reasonable inferences from the evidence support the theory of the complaint." *Marshall Cnty. v. Uptain*, 409 So. 2d 423, 425 (Ala. 1981). "[I]t is only when the facts are such that [a reasonable person] must draw the same conclusion that the question of proximate cause is one of law for the courts." *Giles v. Gardner*, 249 So. 2d 824, 826 (Ala. 1971). It becomes a legal question for a court's decision only when "the facts of the cause are not conflicting, and where there can be no reasonable difference of opinion as to the conclusion to be reached upon them[.]" *Alabama Power Co. v. Moore*, 899 So. 2d 975, 979 (Ala. 2004) (citation omitted).

Further, while the issue of foreseeability in the context of an intervening cause may be decided as a matter of law, it too is more commonly a question for the trier of fact. *Peters v. Calhoun Cnty. Comm'n*, 669 So. 2d 847, 850 (Ala. 1995).

Here, genuine issues of material fact exist concerning foreseeability and the proximate cause of the crash and Lucicus's death. First, when viewing the evidence in a light favorable to the Estate, a reasonable jury could find that Diaz, when he parked his rig on the shoulder of a busy interstate within inches of passing traffic for an extended period of time and into the night, and/or doing so with no hazard lights or reflective triangles in place, could have foreseen that an oncoming vehicle may drift and run into the rear of his rig and that serious injuries could result. Interstate drivers may be intoxicated, distracted, blinded by the sun or weather, sleepy or sick, and may therefore drift off the roadway. If they do so at interstate speeds and collide with another vehicle parked alongside the interstate, they are likely to be injured or

injure other occupants of the vehicles, or both.  The foreseeability of such collisions is precisely the reason why Department of Transportation regulations require the use of flashers and warning triangles and why rules are in place requiring the removal of vehicles from the shoulder of busy interstate highways after a certain period, why rumble strips and guardrails are used, and why trees and other stationary structures are generally prohibited within a certain area around an interstate.  (*See, e.g.*, Doc. 64-5 at 19; Doc. 64-13 at 2–10; Doc. 72-5 at 69.) *E.g.*, Ala. Code §§ 32-5-51, 32-10-1(c).

ALL contends that Diaz's actions were a remote cause and that Lucicus's own actions were an intervening cause that severed any chain of causation that may have existed from Diaz's conduct.  Resolution of that issue involves the same foreseeability analysis. The act of drifting from the traveled portion of an interstate road into the shoulder or emergency lane and at night is not so egregious a departure from ordinary standards of care as to be unforeseeable as a matter of law.  This is true even if the driver can offer no reason for leaving the road.  A jury should decide whether Lucicus's actions in drifting out of his lane of traffic under the circumstances here was so far outside the bounds of reasonable driving as to be unforeseeable by Diaz, or that it constituted contributory negligence.

That Diaz was not in violation of a specific rule, regulation, or statute at the time he parked his rig on the shoulder of the interstate does not immunize him from liability for negligence. And that the accident here occurred partly on the shoulder of the interstate rather than the traveled portion of the interstate is not enough to establish as a matter of law that Lucicus was the *sole* proximate cause of the accident. Actors are responsible not only for the likely consequences of their acts or omissions, but also for the consequences that might reasonably be anticipated; that is, those consequences that are reasonably foreseeable.  If an injury is foreseeable from the original negligent act or omission, the intervening act of an independent agency will

10

not constitute a defense because it does not cut off the chain of causation, and the party guilty of the original act or omission will be held responsible.

On this record, it would be improper to declare as a matter of law that Lucicus's actions were not reasonably foreseeable and amounted to an intervening cause, especially when the Court is obligated to draw all inferences in favor of the Estate. Reasonable minds may differ on the questions here, and summary judgment is not appropriate. The Estate's negligence claim directly relating to the operative events of July 19 and 20, 2017, will proceed.

*B. The Wantonness Claim*

ALL also seeks summary judgment on the Estate's wantonness claim relating to the events of July 19 and 20, 2017. In addition to arguing the lack of a duty on Diaz's part and intervening fault on Lucicus's part, ALL argues its entitlement to summary judgment because the facts do not support a triable claim of wantonness. The Estate, for its part, advances the same facts here as it did to support its claim for negligence. And, again, the Estate makes no legal argument. It just cites the evidence.

Under Alabama law, "[w]antonness is the doing of some act or the omission to do some act with reckless indifference that such act or omission will likely or probably result in injury." *IMAC Energy, Inc. v. Tittle*, 590 So. 2d 163, 168 (Ala. 1991); *accord Blizzard v. Food Giant Supermarkets, Inc.,* 196 F. Supp. 2d 1202, 1208 (M.D. Ala. 2002) (citations omitted); *see also* Ala. Code § 6-11-20(b)(3) (defining wantonness as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others"). Wantonness requires evidence of a defendant's reckless or conscious disregard of the rights and safety of others. *See Wal-Mart Stores, Inc. v. Thompson*, 726 So. 2d 651, 653 (Ala. 1998). And "[w]antonness may arise [when one has] knowledge that persons, though not seen, are likely to be in a position of danger, and with conscious disregard of known

conditions of danger and in violation of law brings on disaster." *Smith v. Bradford*, 512 So. 2d 50, 52 (Ala. 1987) (alteration in original) (citation omitted).

Even though wantonness requires a conscious or an intentional act, "the actor's knowledge may be proved by showing circumstances from which the fact of knowledge is a reasonable inference; it need not be proved by direct evidence." *Hicks v. Dunn*, 819 So. 2d 22, 23 (Ala. 2001) (quoting *Scott v. Villegas*, 723 So. 2d 642, 643 (Ala. 1998)). "[I]t is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff." *Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998) (per curiam).

In the context of motor vehicle accidents, including a standing vehicle accident such as this one, wantonness depends on the particular facts presented in each case. *Cheshire v. Putnam*, 54 So. 3d 336, 342 (Ala. 2010) (per curiam). And, under Alabama law, there is a rebuttable presumption that a driver does not act wantonly in causing a car accident. *See Thomas v. Heard*, 256 So. 3d 644, 657–58 (Ala. 2017) (per curiam). That is because people "act in their own self-interest," and thus, a driver has "no consciousness that an injury would likely occur from his actions because presumably he would not engage in activity that would knowingly result in harm to himself." *Id.* at 658.

However, where a driver's actions are more dangerous to other parties than to himself, the presumption against self-destructive behavior—and therefore wantonness—does not apply. *See McCutchen v. Valley Home, Inc.*, 100 F. Supp. 3d 1235, 1240 (N.D. Ala. 2015) (finding that the fact a driver acknowledged that the driver of an 18–wheeler is generally safer in a collision than the driver of the other vehicle meant that the presumption against self-destructive behavior did not apply); *Griffin v. Modular Transp. Co.,* No. 2:12–CV–2378–WMA, 2014 WL 896627, at *4 (N.D. Ala. Mar. 6, 2014) (determining that "[a] collision between a car and the flatbed portion of a tractor trailer does not carry the same risk of injury to the trailer

12

driver as it does to the car driver[,]" and therefore the presumption against self-destructive behavior was inapplicable).

Moreover, even when the presumption against self-destructive behavior applies, this presumption may be overcome by showing the driver's judgment was impaired or that the conduct at issue was so inherently reckless that a court might otherwise attribute to the driver depravity consistent with disregard of instincts of safety and self-preservation.  "Inherently reckless behavior, for example, might be driving in reverse on a major interstate; driving through an intersection at a very fast speed after ignoring a stop sign; or abruptly moving from the right lane into the left lane after seeing a video store on the left and deciding to stop and get a movie." *Craft v. Triumph Logistics, Inc.*, 107 F. Supp. 3d 1218, 1222 (M.D. Ala. 2015) (cleaned up).  "In each of these instances, something more than mere inattention, that is, an exacerbating circumstance, contributed to the accident."  *Id.*

The question is whether there is sufficient evidence from which a jury could reasonably find wantonness when the facts are viewed in the light most favorable to the Estate.  There is.

In this regard, a jury could find that Diaz made a conscious and deliberate decision to park his rig in the location where he did, *i.e.*, within inches of a busy interstate lane of travel over an extended period of time and into the night and without turning on his truck lights or placing out warning triangles, and that he and ALL decided to have the rig repaired there instead of having it towed to another, safer location, all of which exposed other drivers to an unnecessary and hazardous risk.[3]

---

[3] ALL has advanced legitimate reasons for Diaz's decision to park his rig where he did and for not having the rig towed to another location, and it has presented evidence suggesting that the rig's lights were on, and the warning triangles set out.  But these are factual issues for consideration by the jury.  They are not appropriate for a dispositive ruling as a matter of law, especially when

Although ALL argues that Diaz's actions, if true, were unavoidable and reasonable—at worst mere inadvertence or negligence—which they may have been, there are also facts in the record suggesting Diaz could have acted recklessly or with conscious disregard for the safety of others.  Whether he did is a fact-driven analysis appropriate for a jury.  *See, e.g.*, *Johnson v. ABF Freight Sys., Inc.*, No. 2:18-cv-01835-MHH, 2021 WL 1320500, at *2–4 (N.D. Ala. Apr. 8, 2021) (denying summary judgment on wantonness claim in motor vehicle accident case where truck driver created a hazardous situation with his chosen method in attempting to make a turn); *Shows v. Redline Trucking, LLC.*, No. 2:18-cv-01692-AKK, 2020 WL 2527105, at *3–4 (N.D. Ala. May 18, 2020) (finding that plaintiff's contention that defendant stopped his trailer in a lane of travel during a dark morning without illuminating any lights was sufficient to preclude summary judgment on wantonness claim); *McCutchen*, 100 F. Supp. 3d at 1240 (denying summary judgment on a wantonness claim because a genuine dispute of material fact existed as to whether the driver of tractor-trailer turned his large rig around on the highway in conscious disregard of the alleged danger to traffic he was creating); *Monroe v. Brown*, 307 F. Supp. 2d 1268, 1271–72 (M.D. Ala. 2004) (admonishing that courts should be mindful of the Alabama Supreme Court's holding that wantonness should be submitted to the jury unless there is a "total lack" of evidence from which the jury could reasonably infer wantonness).  Thus, ALL's motion for summary judgment is due to be denied on the Estate's wantonness claim directly relating to the operative events of July 19 and 20, 2017.

## VI. CONCLUSION

Accordingly, it is **ORDERED** as follows:

---

gauged against the favorable inferences for the Estate that must be employed at this stage of the proceeding.

1.     The Defendant's *Motion for Summary Judgment* (doc. 63) is **GRANTED in part and DENIED in part** as set forth above.  Summary judgment is denied as to the Estate's claims for negligence and wantonness against Defendant A.L. Logistics, LLC as they concern Ricardo Diaz's actions on July 19 and 20, 2017: parking and leaving the tractor-trailer in the position depicted in the record in the location that he did for as long as he did, engaging the tractor-trailer's lights, and setting out warning triangles.  Summary judgment is further denied to the extent Defendant seeks summary judgment that Wyman Lucicus's actions constitute contributory negligence or an intervening act as a matter of law.  Summary judgment is granted in all other respects.

2.     Plaintiff's *Motion to File Sur-Reply* (doc. 74) is **GRANTED**, and the sur-reply is received as filed.

3.     Defendant's *Motion in Limine* (doc. 66) is **DENIED as moot**. Defendant may refile the motion in advance of trial, directed to the remaining issues in this case;

4.     This case will be set for a jury trial on Plaintiff's remaining claims by a separate order.

**DONE** on this the 14th day of March 2024.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE